UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES STANTON, * | |
| Petitioner, * | |
| * | Civil Action No. 06-1105 (PLF) |
| v. * | |
| * | |
| U.S. PAROLE COMMISSION, et al., * | |
| Respondents. * | |

### UNITED STATES PAROLE COMMISSION'S OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

The United States Parole Commission ("the Commission"), by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Opposition to petitioner's Petition for Writ of Habeas Corpus.

### SUMMARY

Petitioner contends that he is entitled to restoration of his supervised release or another revocation hearing because, according to petitioner: (1) the Commission did not make a "good cause" finding to excuse the absence of the observation post officer who saw petitioner exchange a small object for money; and (2) the revocation of his supervised release was based solely on unreliable hearsay. Petitioner is mistaken on both points. First, the complete record reflects that the Commission made a "good cause" finding to excuse the officer's absence at the revocation hearing. Second, the record shows that the Commission's revocation decision was based on ample evidence, including the testimony of the arresting officer and the police report (which contained a detailed narrative written by the observation post officer on the day of the arrest). For these reasons, and as more fully explained below, petitioner's petition for habeas corpus should be summarily denied.

**BACKGROUND**

On July 21, 2003, in case number 2003-FEL-1614, petitioner was sentenced by the Superior Court of the District of Columbia to 30 months' incarceration and three years' supervised release for the crime of Attempted Possession with Intent to Distribute Cocaine. Exh. A. This was his fourth conviction involving the distribution of cocaine. Exh. B, at 2.

On June 14, 2005, petitioner was released from custody in case number 2003-FEL-1614 and began his term of supervised release. Exh. C. The written conditions of his release specified that he was not to violate any law and was not to illegally use or possess a controlled substance. Id. at 2. Approximately four months after his release, petitioner began testing positive for PCP. Exh. D, at 2. On November 10, 2005, he was arrested for Possession with Intent to Distribute Cocaine. Id. On that date, at approximately 4:00 p.m., Officer Harry Sowers of the Metropolitan Police Department ("MPD") was in an observation post in the unit block of K Street, N.W., when he saw defendant hand a small object to another man in exchange for money. Exh. E, at 2.

In the narrative section of the arrest report, which Officer Sowers prepared on the same day as the arrest, the officer described what he saw from the observation post:

> The offense occurred Thursday, November 10, 2005, at approximately 1551 hours in the parking lot in the rear of the Unit blk K St., N.W., Washington, D.C. Ofc. Sowers is a member of the 1st District Focus Mission Team. Established by Ofc. Sowers was an observation post in the area observing the parking lot area in the rear of the Unit blk [of] K St., N.W. at approximately 1532 hrs. D-1 (CHARLES STANTON) was approached by an unidentified black male subject in the parking lot area. Def. Stanton then walked to the rear of a dark grey Honda Accord and sat down on the wall area. Def. Stanton's lower torso area was obstructed by the trunk of the vehicle. Observed was Def. Stanton looking towards his left momentarily. Def. Stanton then with his right hand handed a small object to the male subject in exchange for currency. The male subject then left the area. A lookout was given for the male subject who was not located. A lookout was

>given for Def. Stanton (black male, black/green coat, black hat, glasses) who was stopped on the scene and positively identified by the observation post officer. Recovered by Ofc. Bartholomew from the ground in the rear of the vehicle was a green ziplock packet containing (14) fourteen ziplock packets containing a white rock substance which tested positive for the presence of cocaine. Defendant was placed under arrest and transported to the 1st District for processing. Search incident to arrest recovered by Ofc. Melby from Def. Stanton was $13.00 in U.S. currency.

Id.

On November 11, 2005, the United States Attorney's Office "no papered" the case. Exh. D, at 2. On November 17, 2005, petitioner's Community Supervision Officer ("CSO") provided the Commission with a violation report charging that petitioner had violated the conditions of his release by: (1) testing positive on multiple dates for PCP, and (2) being arrested on November 10, 2005 for Possession with Intent to Distribute Cocaine. Exh. D.

On December 22, 2005, the Commission issued a supervised release violator warrant charging petitioner with the following violations: 1) use of dangerous and habit forming drugs; and 2) law violation - possession with intent to distribute cocaine. Exh. F. On January 3, 2006, petitioner was arrested on the warrant. Exh. G, at 1.

On January 6, 2006, petitioner received a probable cause hearing. Exh. G. He was represented at the hearing by an attorney from the Public Defender Service ("PDS"). Petitioner denied both charges and stated that the drug arrest had been "no papered" on November 11, 2005. Id. at 2. Based on the documentary evidence, the hearing examiner determined that there was probable cause to believe that petitioner had violated the conditions of his release. The Probable Cause Hearing Digest reflects that the hearing examiner (on behalf of the Commission) identified three adverse witnesses for the local revocation hearing: petitioner's Community Supervision Officer, Officer Sowers, and Officer Bartholomew. Id. at 3-4. The Probable Cause

3

Hearing Digest also reflects that petitioner, through his counsel, did not request the presence of any adverse witnesses.  Id. at 4.

Petitioner and his counsel signed the Probable Cause Hearing Digest and a copy of this document was given to counsel along with copies of the supervised release violator warrant, the application for the warrant, the CSO's November 17, 2005 Violation Report, and other documents.  Id. at 6.

On March 6, 2006, petitioner's supervised release revocation hearing was held at the Correctional Treatment Facility ("CTF").  Exh. H.  Officer Bartholomew and CSO Williams appeared for the hearing.  Officer Sowers was not present for the hearing and no reason was given for his absence.  Petitioner was represented by a PDS attorney, who "chose to not have [petitioner] speak about [his] arrest [on November 10, 2005] until after [Officer Bartholomew] provided testimony."  Id. at 2.

Under oath, Officer Bartholomew testified that he was part of the arrest team; that Officer Sowers was in the observation post on the day that petitioner was arrested and had seen petitioner and another male engage in a drug transaction; that a lookout was given for both petitioner (the seller) and the male (the buyer); that petitioner was stopped based on the clothing description and race and gender description given by Officer Sowers; that Officer Sowers then made a positive identification of petitioner; that "Officer Sowers ... directed Officer Bartholomew to a stash which was located near a flower box"; that the stash contained "a green ziploc container [with] 14 smaller zips of crack cocaine that tested positive for cocaine"; and that the flower box was a few feet from petitioner.  Id. at 2-3.

On cross-examination, Officer Bartholomew stated that he did not observe the hand-to-hand drug transaction between petitioner and the unknown male; that he did not recall that Officer Sowers' lookout description of petitioner included reference to a tattoo under petitioner's eye (which description appears on the first page of the arrest report); that the lookout description given was for a black male with a black and green coat with a black hat and glasses; that after he received this lookout description, he was told that the subject was near a car and then directed to the stash; that he had no recollection of stopping the petitioner, letting him go, and then returning later and stopping him again; and that he did not know why the United States Attorney's Office had "no papered" the case. Officer Bartholomew also stated on cross-examination that he "was sure that the right person, matching the description provided by Officer Sowers, was stopped." Id. at 3.

After the officer left the room, petitioner testified. According to his testimony, Officer Bartholomew and another officer stopped him, then walked away, then returned five minutes later, arrested him and, in response to petitioner's questions, told him that he would learn at the police station why he had been arrested. Id. at 3. Petitioner also stated that a man named Reynell Tolson witnessed the encounter and he provided Mr. Tolson's unnotarized, typewritten statement. Id.; see also Exh. I. In his account, Mr. Tolson stated that he lived in the unit block of K Street, N.W., that on the day that petitioner was arrested, Mr. Tolson saw him "leaning on a gate, talking to another man" behind the building that Mr. Tolson lived in; that he saw police officers stop both men and release them; that Mr. Tolson and petitioner went and bought ice cream; that when they returned to the rear of Mr. Tolson's building, police stopped petitioner, arrested him and said that they had a tape of him selling drugs; and that Mr. Tolson took

petitioner's property home from the police station. Exh. I. Petitioner's counsel also informed the hearing examiner that she had spoken with petitioner's mother "who reported contacting the Police Department and was advised that [petitioner] would be released because there was a case of mistaken identity." Exh. H, at 3.

Petitioner's CSO testified that she discussed petitioner's arrest with him and that his statements to her were consistent with his testimony at the hearing. The CSO further testified that she had sanctioned the petitioner for his positive drug tests and that subsequent drug tests had been negative. Petitioner admitted to his drug use at the hearing. Id. at 2.

The hearing examiner concluded that petitioner had violated the conditions of his release by using drugs. Id. However, because petitioner had been sanctioned for the use of drugs, the examiner determined that this violation was insufficient for revocation. Id. As to the charge relating to petitioner's arrest, his counsel objected to this charge being considered without Officer Sowers' testimony. Id. The hearing examiner recommended that a decision on this charge be deferred and that Officer Sowers' appearance be secured for the next hearing. Id. The hearing examiner also noted that petitioner was wearing glasses at the time of the hearing, which was consistent with Officer Sowers' lookout description and Officer Bartholomew's testimony regarding petitioner's appearance at the time he was stopped. Id. at 3.

The Commission agreed with the hearing examiner's recommendation and petitioner was advised of the decision by a Notice of Action dated March 27, 2006. Exh. J. The Notice advised petitioner that his case was continued to a subsequent hearing date to re-subpoena Officer Sowers.

On April 11, 2006, the Commission received a telephone call from the Metropolitan Police Department Court Liaison who advised the Commission that Officer Sowers "is serving in an undercover capacity, and is not allowed to attend hearings at the jail." Exh. K. This information was memorialized in a Commission document dated April 12, 2006. Id.

On April 17, 2006, the revocation hearing was resumed at the CTF. Exh. L. The hearing examiner was not the same hearing examiner who presided at the revocation hearing on March 6, 2006. Petitioner and his PDS attorney were present for the hearing. Officer Bartholomew, who was not under subpoena, also was present and stated that Officer Sowers was working in an undercover capacity and could not appear because doing so might compromise his ability to serve as an undercover officer. Id. at 2. The hearing examiner did not make a determination as to whether there was "good cause" for Officer Sowers' non-appearance, but instead recommended that no finding be made on the charge regarding petitioner's arrest for Possession with Intent to Distribute Cocaine.[1] Id.

The hearing summary prepared by the hearing examiner and the other records from petitioner's case later were reviewed by an Executive Hearing Examiner ("EHE"). On May 2, 2006, the EHE added her comments to the hearing summary and stated that she disagreed with the recommendation of "no finding." Id. at 3. The EHE noted that the examiner did not make a determination as to whether there was "good cause" to excuse Officer Sowers' non-appearance. The reviewing examiner also noted that on "April 12, 2006, the Commission was notified that Officer Sowers was working in an undercover capacity and would not be able to appear." Id.

---

[1] It does not appear that Commission's April 12, 2006 memorandum explaining Officer Sowers' absence was provided to the examiner.

Based on this information, the EHE determined that there was good cause to excuse Officer Sowers' non-appearance. The EHE also concluded that the evidence presented at the local revocation hearing supported a finding that petitioner had violated the conditions of his release. On this point, the EHE noted that petitioner had four convictions relating to the distribution of cocaine, that Officer Sowers saw petitioner exchange an item for money, and that when petitioner was arrested, a bag containing 14 smaller baggies was found on the ground near him. The EHE also noted Officer Bartholomew's testimony and the description of petitioner in the police report. Id.

The EHE rated petitioner's offense as Category Three in terms of severity. Petitioner's guidelines were assessed as 18-24 months. Because petitioner was on supervised release for an offense involving possession with intent to distribute, the reviewing examiner recommended release after 22 months from January 3, 2006, the date that the warrant had been executed, and a 38-month term of supervised release. Id.

In accordance with the Commission's regulations, the disagreement between the hearing examiner and EHE required the case to be reviewed by a third examiner. See 28 C.F.R. § 2.216(h). On May 3, 2006, a second reviewing examiner agreed with the EHE that a "good cause" finding should be made excusing the non-appearance of Officer Sowers. Id. at 4. The second reviewing examiner added comments to the hearing summary reflecting that, because the officer was subpoenaed and "a good cause finding was not made at the time of the hearing, I believe that the "basis" section of the Notice of Action should notify [petitioner] of the finding of good cause." Id. Hence, the second reviewing examiner added the following comment to the "basis" section of the hearing summary: "Notwithstanding the Commission's directive in the

Notice of Action dated 3/27/06 to re-subpoena Officer Sowers, the Commission has determined that there is good cause to excuse Officer Sowers because he is an undercover officer and there is reliable hearsay evidence in the form of Officer Bartholomew's testimony and the police report filed on 11/10/2005." Id. at 3.

The Commission agreed with the recommendation of the reviewing examiners. A Notice of Action dated May 8, 2006 informed petitioner that, based on the "[i]nformation in a police report dated 11-10-2005 and [the] testimony of Officer Bartholomew at the 03-06-2006 revocation hearing," the Commission had found that petitioner violated the conditions of his release. Exh. M. The Notice also advised petitioner that his term of supervised release was revoked and that he was required to serve a new term of imprisonment of 22 months. However, the Notice erroneously did not inform petitioner that the Commission had made a finding of good cause as to Officer Sowers' non-appearance.

Petitioner, still represented by PDS, appealed to the Commission's National Appeals Board. Exh. N. He objected to Officer Sowers' non-appearance and asserted that the Commission relied solely on the statement of a witness who admitted at the hearing that he did not have personal knowledge of the incident. The National Appeals Board rejected petitioner's claims. Exh. O. The Board first explained that, contrary to petitioner's claim, the Commission had made a good cause finding to excuse Officer Sowers' non-appearance:

> The record shows that the Commission (at the review stage) made a good cause finding for the non-appearance of Officer Sowers: "Notwithstanding the Commission's directive in the Notice of Action dated 3/27/06 to re-subpoena Officer Sowers, the Commission has determined that there is good cause to excuse Officers Sowers because he is an undercover police officer and there is reliable hearsay evidence in the form of Officer Bartholomew's testimony and the police report filed on 11/10/05." This finding was contained in the hearing summary. It was erroneously omitted from the NOA [Notice of Action] and is

> supplied here in lieu of on the NOA. The Commission did not reclassify Sowers as a non-adverse witness; rather, in conformity with Morrissey v. Brewer, 408 U.S. 471, 498 (1972), the Commission found good cause for not permitting confrontation of Officer Sowers (as detailed above).

Id.

The National Appeals Board also explained that sufficient, reliable evidence was adduced at the revocation hearing to show that petitioner had violated the conditions of his release:

> The information relied upon by the Commission in finding you to have possessed with intent to distribute cocaine was sufficiently reliable to permit a finding even without the appearance of Sowers. The police report itself bore indicia of reliability in the fact that it was detailed, and the report was corroborated by the description that had been given by Officer Sowers (black male, black/green coat, black hat, glasses); by his testimony that he found a "stash" of drugs at the place that he had been told by Officer Sowers that it would be, a few feet from where you were, on foot, in the location where the drug transaction had been observed; and by his testimony that Officers Sowers had positively identified you at the scene as the person Sowers had described. See Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003). (The description was further corroborated by the fact that you were wearing glasses at the time of the hearing.)

Id.

## ARGUMENT

"The writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C.§ 2241(c)(3). Petitioner contends that the Commission's revocation of his supervised release violated his due process rights, and he offers two arguments in support of this contention. First, he claims that the Commission implicitly "reclassified" Officer Sowers as a non-adversarial witness and thereby engaged in a "bait and switch" maneuver to avoid the requirement that "good cause" be shown to excuse the absence of an adversarial witness. Second, he claims that the Commission relied solely on hearsay - all of which was unreliable, according to petitioner - in revoking his

supervised release. The complete record squarely contradicts petitioner's first claim. His second claim fails because the record shows that there was a sufficient evidence - consisting of both reliable hearsay and direct testimony - supporting the Commission's decision to revoke petitioner's supervised release.

## I.     Legal Principles

Supervised release, like parole, is not an absolute form of liberty, but rather a form of liberty constrained by conditions and subject to revocation if the releasee has violated those conditions "so as to indicate that [he] is not adjusting properly and cannot be counted on to avoid antisocial activity." Morrissey v. Brewer, 408 U.S. 471, 479 (1972) (parole revocation); United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995) (supervised release revocation). The Morrissey Court established "the minimum requirements of due process" to which a releasee is entitled when revocation of his release is at issue, and held that due process demands "some orderly process, however informal." 408 U.S. at 482, 488-89.[2]

A releasee accused of violating the conditions of his supervised release is to be granted "two hearings, one a preliminary hearing at the time of his arrest to determine whether there is probable cause to believe that he has committed a violation of his [release], and the other a

---

[2] Although Morrissey dealt with parole revocation, the same analysis applies to the revocation of supervised release. See, e.g., United States v. Kelley, 446 F.3d 688, 691 (7th Cir. 2006) (noting that the holdings in Morrissey and Gagnon v. Scarpelli, 411 U.S. 778 (1973) (probation revocation) "apply to supervised release revocations..."); United States v. Hall, 419 F.3d 980, 985 n.4 (9th Cir. 2005) ("[p]arole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner"); Jones v. United States, 669 A.2d 724, 727 (D.C. 1995) ("[a] supervised release revocation hearing is the functional equivalent of a probation or parole revocation hearing. The same evidentiary rules apply [and] decisions are made according to similar guidelines and standards of proof").

somewhat more comprehensive hearing prior to the making of the final revocation decision." Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973) (probation revocation).

As to the second hearing - which is the one at issue here - the Supreme Court has "emphasize[d] [that] there is no thought to equate this second stage of ... revocation to a criminal prosecution in any sense." Morrissey, 408 U.S. at 489. "The revocation of parole [or supervised release] is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole [or supervised release] revocations." Id. at 480; see also Gagnon, 411 U.S. at 788-89 ("there are critical differences between criminal trials and probation or parole revocation hearings"); Singletary v. Reilly, 452 F.3d 868, 869 (D.C. Cir. 2006) (same); Ash v. Reilly, 431 F.3d 826, 829 (D.C. Cir. 2005) (same); Maddox v. Elzie, 238 F.3d 437, 445 (D.C. Cir. 2001) (same) Pratt, 52 F.3d at 675 (supervised release).

Hence, the Supreme Court declined to provide a "code of procedure" for such hearings, and stressed that this second hearing "is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id. Reliable hearsay evidence thus is admissible. See Crawford v. Jackson, 323 F.3d 123, 128 (D.C. Cir. 2003); see also Singletary, 452 F.3d at 872; Ash, 431 F.3d at 829; Pratt, 52 F.3d at 675.

The "beyond a reasonable doubt" standard used in criminal trials does not play a role in the revocation context. Rather, the much less onerous "preponderance of the evidence" standard applies. See 28 C.F.R. § 2.218(a) (2003); see also Allston v. Gaines, 158 F. Supp. 2d 76, 80 (D.D.C. 2001) ("the Parole Commission need only find a violation of parole conditions by a

preponderance of evidence); Harris v. United States, 612 A.2d 198, 203-07 (D.C. 1992) (holding that the preponderance standard applies in the probation revocation context).

## II.     The Commission Found Good Cause To Excuse Officer Sowers' Absence

Petitioner claims that the Commission did not make a finding of good cause to excuse Officer Sowers' absence. It appears that on June 8, 2006, when he filed his appeal with the Commission's National Appeals Board, and on June 15, 2006, when he filed his habeas petition with this Court, petitioner's belief that the Commission had not made a good cause finding was based on the May 8, 2006 Notice of Action and the hearing examiner's comments at the April 17, 2006 hearing. In fact, the complete record reflects that Commission did make such a finding, but that this finding was not communicated to the petitioner until August 3, 2006, when the National Appeals Board denied petitioner's appeal.[3]

More specifically, while it is true that the hearing examiner who presided over the continued revocation hearing on April 17, 2006 did not make a good cause finding, the two reviewing examiners did make such a finding. The EHE who reviewed the record on May 2, 2006 noted that on "April 12, 2006, the Commission was notified that Officer Sowers was working in an undercover capacity and would not be able to appear." Exh. L, at 3. Based on this information, this reviewing examiner determined that there was good cause to excuse Officer Sowers' non-appearance. On May 3, 2006, the second reviewing examiner agreed that a good

---

[3] The May 8, 2006 Notice of Action (like all other such Notices) automatically was issued to petitioner. However, other documents - such as the pre-hearing assessment before the revocation hearing and the hearing summary - only are disclosed if petitioner makes a request through the Freedom of Information Act ("FOIA"). Here, petitioner's counsel made a FOIA request for the transcript from the revocation hearing but did not request any other documents. Hence, counsel lacked the documents showing that a good cause finding had been made.

cause finding was appropriate and sought to ensure that the Notice of Action specify that such a finding had been made. The Commission adopted the recommendations of the reviewing examiners. On May 8, 2006, the Commission issued a Notice of Action informing petitioner that his supervised release had been revoked. Exh. M. This Notice, however, omitted that the Commission had made a good cause finding. In denying petitioner's appeal on August 8, 2006, the National Appeals Board noted that "[t]his [good cause] finding was contained in the hearing summary. It was erroneously omitted from the [Notice of Action] and is supplied here in lieu of on the [Notice]." Exh. O.

"The absence of an adverse witness does not violate a parolee's due process rights if 'the hearing officer specifically finds good cause for not allowing confrontation.'" Ash, 431 F.3d at 830 (quoting Morrissey, 408 U.S. at 489); see also 28 C.F.R. § 2.216(d) ("[t]he Commission may excuse any requested adverse witness from appearing at the hearing (or from appearing in the presence of the alleged violator) if the Commission finds good cause for so doing. A finding of good cause for the non-appearance of a requested adverse witness may be based, for example, on a significant possibility of harm to the witness, or the witness not being reasonably available when the Commission has documentary evidence that is an adequate substitute for live testimony"). Further, the inability to confront witnesses does not cause a due process violation if the documentary evidence contains sufficient indicia of reliability to be an appropriate substitute for live testimony. See Crawford, 323 F.3d at 130-31.

Here, the complete record reflects that the Commission made a good cause finding to excuse Officer Sowers' absence at the continued revocation hearing. Moreover, as explained below, Officer Sowers' arrest report was reliable and hence a permissible substitute for his live

testimony. In sum, petitioner's claim that the Commission did not have good cause to excuse this officer's absence is contradicted by the record and does not merit relief.[4]

### III.   The Commission's Decision to Revoke Petitioner's Supervised Release Was Not Totally Lacking in Evidentiary Support or So Irrational as to Be Unfair

A releasee may successfully challenge the Commission's revocation decision only by showing that it was "either totally lacking in evidentiary support or so irrational as to be fundamentally unfair." Duckett v. Quick, 282 F.3d 844, 847 (D.C. Cir. 2002); see also Singletary, 452 F.3d at 872 (same); Ash, 431 F.3d at 830 (same); Crawford, 323 F.3d at 129 (same); Allston, 158 F. Supp. 2d at 79 ("judicial review of the Parole Commission's decision to revoke parole is narrowly circumscribed"; the Commission's decision must be upheld unless there is no rational basis supporting it). Thus, this Court must determine whether the Commission's conclusion that petitioner violated the conditions of his supervised release was totally without evidentiary support or irrational as to be fundamentally unfair.

Here, ample evidence - in the form of eyewitness testimony, reliable hearsay and other evidence - established that petitioner violated the conditions of his release by selling crack cocaine.[5] First, Officer Sowers' narrative in the arrest report provided a "fairly full account of

---

[4]  Further, if the Commission had not made a good cause finding, it would not necessarily follow that petitioner's due process rights were violated. "Even if there is no good cause, a parolee is not entitled to a new parole hearing unless he shows 'prejudice from his inability to cross-examine' the missing witness." Ash, 431 F.3d at 830 (quoting Crawford, 323 F.3d at 131. Petitioner has not alleged that Officer Sowers would have offered any exculpatory evidence. In addition, at the conclusion of the probable cause hearing, petitioner did not request that the officer be present at the revocation hearing. See Kell v. U.S. Parole Comm'n, 26 F.3d 1016, 1019-20 (10th Cir. 1994) ( petitioner cannot rely on the Commission's notice that an adverse witness will appear for a hearing when he failed to request the witness).

[5]  In his petition, petitioner's account of the evidence presented at the revocation hearing differs in some respects from the hearing summary. We do not concede the accuracy of

the circumstances surrounding" the crime.  Crawford, 323 F.3d at 130.  Contrary to petitioner's claim, Officer Sowers wrote this narrative and thus this is not a case involving "multilayered" hearsay or hearsay statements by unidentified witnesses.  Cf. Singletary, 452 F.3d at 873 (hearsay evidence presented at revocation hearing was not reliable because it was multilayered); Ash v. Reilly, 433 F. Supp. 2d. 37, 44 (D.D.C. 2006) (on remand in case where an officer testified as to the statements of a number of individuals on the scene of an assault, the Magistrate Judge held that the officer's testimony and his arrest report were not reliable because the speakers were not identified).[6]

Officer Sowers' detailed narrative stated that on November 10, 2005, at almost 4:00 p.m., he was in an observation post with a view of a parking lot in the rear of a building in the unit block of K Street, N.W.  Exh. E, at 2.  An unknown man approached the petitioner, who "walked to the rear of a dark grey Honda Accord" and sat down on a wall.  Id.  The car blocked petitioner's lower torso, but the officer saw him "looking toward his left momentarily."  Id.  The officer then saw petitioner engage in a hand-to-hand drug transaction with the unidentified man:

> [Petitioner] then with his right hand handed a small object to the male subject in exchange for currency.

Id.

---

petitioner's account insofar as it differs from the hearing summary.

[6] Petitioner asserts repeatedly that Officer Sowers did not write the narrative in the arrest report.  See, e.g., Petition at 9 & 11 n.2.  This is incorrect.  On page two, Boxes 66 and 67, of the arrest report, Officer Sowers printed and signed his name, thereby signifying that he was the "officer making [the] statement."  Exh. E.  If there were any doubt, it is dispelled by his badge number, 3364, which also appears at the bottom of page two on the arrest report.  Page one of the arrest report and the April 12, 2006 Commission memorandum explaining the reason for Officer Sowers' absence list this officer's badge number as "3364."

Officer Sowers gave a lookout description for the buyer, but the buyer was not found. The officer also gave a lookout description for petitioner, describing him as a black male wearing a black and green coat, black hat and glasses. Id. Petitioner was stopped "on the scene" and Officer Sowers identified him as the drug seller. Thirteen dollars was recovered from him, and a stash of fourteen bags of crack cocaine was found near the rear of the car where Officer Sowers had seen petitioner exchange the small object for money. Thus, while Officer Sowers' narrative in the arrest report was hearsay, it was "quite detailed, an indicia of reliability." Crawford, 323 F.3d at 130.

Second, Officer Bartholomew's sworn testimony corroborated Officer Sowers' arrest narrative, which also indicated that the report was reliable. Id. (noting that corroboration of an arrest report indicates that the report is reliable). Officer Bartholomew confirmed that petitioner was present at the location specified in the arrest report and that he fit the lookout description. Officer Bartholomew testified that he "was sure that the right person, matching the description provided by Officer Sowers, was stopped." Exh. H, at 3. He also testified that Officer Sowers positively identified petitioner. Officer Bartholomew stated that Officer Sowers directed him to the location of the stash of drugs and that at that location, a green plastic bag with 14 smaller ziplock bags containing crack cocaine was found. Further, the location of the stash was a few feet from the petitioner and close to a car, which also was consistent with Officer Sowers' arrest report.

Third, the evidence presented by petitioner himself corroborated Officers' Sowers arrest report in several important respects. Crawford, 323 F.3d at 130 (noting that prisoner's admissions at the hearing "corroborate portions of the [arrest] report"). Petitioner and Mr.

Tolson (through his unnotarized statement) confirmed that petitioner was on the scene. Mr. Tolson's statement also confirmed that petitioner was indeed speaking with an African-American male before he was stopped by the police. Moreover, it is notable that petitioner's testimony and Mr. Tolson's statement focus on the actions of the police rather than petitioner's actions. Thus, petitioner and Mr. Tolson posit a somewhat far-fetched scenario (which differs somewhat depending on the teller) whereby the police stopped petitioner, then let him go, then stopped him again. Significantly, Mr. Tolson never denies that petitioner was selling drugs and neither Mr. Tolson nor petitioner denies that petitioner matched the lookout description.

Fourth, petitioner wore eyeglasses at the revocation hearing on March 6, 2006. Exh. H, at 3. This too corroborated Officer Sower's lookout description of him in the arrest report. In addition, as the Executive Hearing Examiner noted, petitioner had four convictions relating to the distribution of cocaine. Exh. L, at 3. In sum, on this record, there is no support for petitioner's claim that the Commission's decision to revoke his supervised release was based on unreliable hearsay. Moreover, the Commission's decision to revoke petitioner's release certainly was not "totally without evidentiary support," nor was it fundamentally unfair.[7]

---

[7] The fact that the criminal case against petitioner was "no papered" does not preclude the Commission from finding, by a preponderance of the evidence, that petitioner had violated the conditions of his release. See Crawford v. Barry, 1996 WL 734096, at*1 (D.C. Cir. 1996) (D.C. Parole Board properly relied on criminal charge of which petitioner had been acquitted); Mullen v. U.S. Parole Comm'n, 756 F.2d 74, 75 (8th Cir. 1985) ("[a] prosecutor's assessment that the evidence is insufficient to prove a charge is irrelevant to the Parole Commission's consideration of the charge as new criminal parole violator conduct"); Barnes v. District of Columbia Board of Parole, 759 A.2d 1073, 1075 (D.C. 2000) (upholding revocation of parole based on a dismissed murder charge).

**CONCLUSION**

For the foregoing reasons, petitioner's petition for writ of habeas corpus should be summarily denied.

                                           Respectfully submitted,

                                           JEFFREY A. TAYLOR
                                           Interim United States Attorney
                                           D.C. Bar Number 498-610

                                           ROBERT D. OKUN
                                           Assistant United States Attorney
                                           Chief, Special Proceedings Division
                                           D.C. Bar Number 457-078


                                         ___/s/_____
                                         MARGARET J. CHRISS
                                         Assistant United States Attorney
                                         D.C. Bar Number 452-403
                                         555 4th Street, N.W.
                                         Special Proceedings Division (10th Floor)
                                         Washington, D.C.  20530
                                         (202) 307-0874


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this, 5th day of October 2006, a copy of the foregoing Opposition to petitioner's Petition for Writ of Habeas Corpus has been served via the United States District Court for the District of Columbia's ECF program upon petitioner's counsel of record:

Olinda Moyd, Esq.

                                         ___/s/_____
                                         Assistant United States Attorney