**Exhibit N**



# APPEAL

U.S. Department of Justice
United States Parole Commission

Name  **Charles Stanton**

Register No. **24683-016**    Institution **CCA**

I received a Notice of Action dated **May 8, 2006** and appeal that decision under 28 C.F.R. §2.26 and/or §2.220.

_D. Ritter_ on behalf of    **6/8/06**
(Signature)    (Date)
Mr. Stanton

**INSTRUCTIONS:**

**Eligibility to file the appeal.** This appeal is available only to: (1) a U.S. Code offender who is eligible for parole (including a military offender); (2) a D.C. Code offender whose term of supervised release has been revoked; (3) a transfer treaty offender who committed the foreign offense before November 1, 1987; and (4) a state offender who is under the Commission's jurisdiction pursuant to 18 U.S.C. §3522.

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form you must provide a brief summary of all the grounds for your appeal. On page three of this form you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents which are in the Commission's file.

**Mailing address.** You should mail the appeal to U.S. Parole Commission, Appeals Unit, 5550 Friendship Boulevard, Chevy Chase, MD 20815-7201.

**Permissible grounds for appeal.**

(a) The Commission relied on erroneous information, and the actual facts justify a different decision.

(b) There was significant information in existence but not known to me at the time of the hearing, and a different decision would have resulted if the information had been presented.

(c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

(d) The Commission applied a statute or regulation incorrectly (e.g., in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

(e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

(f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

(g) There are especially mitigating circumstances in my case which justify a different decision.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc. This form must be used for all appeals filed on or after September 1, 2003.    Page 1 of 4    Parole Form I-22 (August 2003)

## SUMMARY OF GROUNDS FOR APPEAL

Instructions: Briefly describe the error which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

Ground One: _see attached_____

_____
_____
_____
_____
_____
_____
_____

Ground Two:_____

_____
_____
_____
_____
_____
_____

Ground Three:_____

_____
_____
_____
_____
_____
_____

Ground Four:_____

_____
_____
_____
_____
_____
_____

Note: You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc. This form must be used for all appeals filed on or after September 1, 2003.        Page 2 of 4        Parole Form I-22 (August 2003)

## STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

Instructions: Please present your grounds for appeal in the order in which they appear in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

Ground One: (Circle the applicable ground for appeal from Page 1: a   b   c   d   e   f  (g))

Facts: _see attached_____

_____

_____

_____

_____

_____

_____

Reasons: _see attached_____

_____

_____

_____

_____

_____

_____

Ground Two: (Circle the applicable ground for appeal from Page 1:   a   b   c   d   e   f   g).

Facts:_____

_____

_____

_____

_____

_____

Reasons:_____

_____

_____

_____

_____

_____

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc. This form must be used for all appeals filed on or after September 1, 2003.       Page 3 of 4       Parole Form I-22 (August 2003)

**GROUND 1:**

(G) There are especially mitigating circumstances in my case which justify a different decision.

**FACTS:**

Charles Stanton, respectfully submits this request for an appeal, based on the unconstitutional determination that Mr. Stanton committed the crime of possession with intent to distribute cocaine, the United States Parole Commission (hereinafter "Commission") unlawfully found that Mr. Stanton was in violation of the conditions of his release on supervised release and remanded him to prison to serve a 22 month sentence.

The decision made by the Commission against Mr. Stanton in the Notice of Action dated May 8, 2006, violated his rights under Fourteenth Amendment to the United States Constitution because the Commission did not produce the adverse witness which it deemed necessary in Mr. Stanton's case, as per a notice of action dated March 27, 2006. Mr. Stanton should not be deprived of his liberty based solely on the statement of a witness who admitted on the record that he did not have personal knowledge of the incident and that another witness was better suited to give information. Moreover, the Commission agreed that Mr. Stanton should have the opportunity to confront and cross-examine the necessary witness in a notice of action dated March 27, 2006.

Given the constitutional violations committed against Mr. Stanton, as a result of the notice of action dated May 8 2006, which deprived him of his liberty based solely on unreliable and uncorroborated hearsay, Charles Stanton requests this Court grant this petition and:

1

(1) Order the respondents to release Mr. Stanton from custody, terminate the parole revocation process against him, and reinstate Mr. Stanton to supervision; or, in the alternative,

(2) Order the Respondents to release Mr. Stanton from custody and order a final supervised release hearing that comports with all the constitutional requirements afforded to a supervised releasee, including requiring the presence of the Commission's witnesses against Mr. Stanton for cross-examination.

On November 10, 2005, Mr. Stanton was arrested in the District of Columbia and charged with possession with intent to distribute cocaine. The police report alleged that Officer Harry Sowers observed two black males conducting a drug transaction. The report also stated that the view from the observation post was partially obstructed. A lookout was given for the two black males and Mr. Stanton was placed under arrest by an Officer Melby and a search incident to arrest indicated that Mr. Stanton had $13.00 of U.S. currency. Narcotics were recovered by Officer Bartholomew away from Mr. Stanton's person. *See* Metropolitan Police Department Police Report, PD163, November 10, 2005 (attached as Exhibit #1).

Mr. Stanton's case was disposed of on November 11, 2005, when the United States Attorney's office no papered his case and Mr. Stanton was released. *See* Superior Court for the District of Columbia Criminal Information System, Count Details, Case No. F0652405 (attached as Exhibit #2).

Following the resolution of the aforementioned case in Superior Court, Mr. Stanton's Community Supervision Officer, Nacre S. Williams submitted a request for a

warrant to the United States Parole Commission as a result of Mr. Stanton's re-arrest. *See* Alleged Violation Report, November 17, 2005 (attached as Exhibit #3). The Commission charged Mr. Stanton with one technical violation of his parole as well as possession with intent to distribute cocaine, stemming from the arrest for the charge which was no papered.

At Mr. Stanton's probable cause hearing on January 6, 2006, the hearing examiner made a finding of probable cause on use of dangerous and habit forming drugs and on possession with intent to distribute crack cocaine and scheduled Mr. Stanton for a local revocation hearing on those charges for March 8, 2006 in Washington, D.C. *Cf.* 28 C.F.R. 2.23(a)(2003); 66 Fed. Reg. 51301 (Oct. 9, 2001)(Commission delegated probable cause determinations to hearing examiner).

At the conclusion of the probable cause hearing, Mr. Stanton asserted his right to cross-examine and confront the witnesses against him. The Commission identified two adverse witnesses, Officer Harry Sowers and Officer B. Bartholomew. A reading of the police report indicated that Officer Sowers was present at the observation point and was an eyewitness and Officer Bartholomew simply recovered the narcotics. The Commission subpoenaed both Officers to the final revocation hearing on March 8, 2006. *See* D.C. Probable Cause Hearing Digest for Charles Stanton. January 3rd, 2006 (attached as Exhibit #4).

At Mr. Stanton's revocation hearing on March 8, 2006, only Officer Bartholomew complied with the subpoena issued by the Commission by appearing as a witness, Officer Sowers, defied the subpoena. After the hearing examiner reviewed Mr. Stanton's procedural rights, counsel objected to proceeding without the presence of Officer Sowers

3

and stated clearly that Mr. Stanton was not waiving his right to cross examine Officer Sowers. The hearing examiner indicated that she would go forward with the testimony of Officer Bartholomew and then make a decision as to the necessity for re-subpoenaing Officer Sowers. The hearing examiner never articulated any good cause for the non-appearance of Officer Sowers.

Officer Bartholomew was the only witness who testified on behalf of the Commission against Mr. Stanton. The officer testified that he did not see Mr. Stanton dealing any drugs and he was just moving into the area based on Officer Sowers' lookout. Moreover, when Officer Bartholomew stopped Mr. Stanton, he did not recover any drugs on his person and only recovered narcotics in an area within the observation. When counsel questioned Officer Bartholomew as to the reason he had stopped Mr. Stanton, he said it was based on Sowers' statements. Officer Bartholomew was then adamant that he could not and would not speak on behalf of Officer Sowers.

The only information that Officer Bartholomew testified about is that of which he had personal knowledge: (1) he stopped Mr. Stanton; (2) he recovered drugs at the back part of a vehicle that Mr. Stanton was standing in proximity to.

Following Officer Bartholomew's testimony, counsel again objected to the Commission's sole reliance on the officer's testimony, which provided nothing but a confirmation that Mr. Stanton was stopped by the police and that narcotics were recovered in proximity to Mr. Stanton's person, but not on his person. Moreover, Officer Bartholomew, himself continually stated that he could not and would not speak to what Officer Sowers stated that he observed from his observation point and that the questions

4

relating to those observations would have to be directed to Officer Sowers himself, since Officer Bartholomew only recovered the narcotics.

The hearing examiner, after hearing Officer Bartholomew's testimony, concluded that in fact it was necessary to re-subpoena Officer Sowers in order to obtain testimony about his observations, as he is the only witness named in the police report, who is claiming to have personal knowledge of a crime that was allegedly committed by Mr. Stanton. The hearing examiner concluded the hearing by requesting that the hearing be continued to obtain the testimony of Officer Sowers.

Mr. Stanton received a confirmation notice of the Commission's intent to re-subpoena Officer Sowers in a Notice of Action dated March 27, 2006. *See* United States Parole Commission, Notice of Action for Charles Stanton, March 27, 2006(attached as Exhibit #5).

A subsequent hearing was scheduled for April 17th, 2006 in order to obtain the testimony of Officer Sowers. At that hearing Officer Sowers, again disregarded the subpoena order. Officer Bartholomew appeared again, despite not having been subpoenaed and stated to counsel and the Commission that Officer Sowers would not be appearing at the hearing.

The hearing examiner, as a result of Officer Sowers' second non-appearance and the fact that there was no good cause articulated for his non-appearance made a no finding on the possession with intent to distribute charge and moreover deemed the technical violation, use of dangerous and habit forming drugs, insufficient for revocation as Mr. Stanton had fully complied with his Community Supervision Officer's sanctions.

5

A Notice of Action issued by the Commission on May 8, 2006, made clear that the findings of the hearing examiner had been overturned by the Commissioners when, instead of reinstating Mr. Stanton, they ordered that Mr. Stanton's supervised release be revoked and that he be sanctioned to a term of imprisonment of 22 months, followed by another 38 months of supervision. The finding was based on "information contained in the police report dated 11-10-2005 and the testimony of Officer Bartholomew at the 03-06-2006 revocation hearing. *See* United States Parole Commission, Notice of Action for Charles Stanton, May 8, 2006 (attached as Exhibit #6 ).

**REASONS**

I. **Stanton's Due Process Rights Were Violated When The Commission Revoked His Parole Without Affording Him An Opportunity To Confront The Observing Officer.**

In order to reverse the hearing examiner's "no finding" recommendation and revoke Mr. Stanton's parole without a further hearing the Commission had to either reclassify Officer Sowers as a "non-adverse" witness or decide to deny Stanton the opportunity to confront this witness without providing a good cause basis. Both alternatives defy the *Morrissey* confrontation guarantee and deprive Mr. Stanton due process of law. *Morrissey v. Brewer*, 408 U.S. 471 (1972) A parolee's right to "confront and cross-examine adverse witnesses" marks one of the "minimum requirements of due process" guaranteed in parole revocation hearings. *Id.* Consistent with the Court's intent that revocation decisions be made on the basis of "verified facts" and "accurate knowledge," an adverse witness is anyone who provides inculpatory hearsay evidence that the Commission relies on to make a revocation determination. *Id., See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Thus, "[o]n request of the parolee, a person who has

6

given adverse information on which parole revocation is to be based is to be made available for questioning in his presence." *Morrissey, 408 U.S. at 497, 498* The Commission's decision to revoke parole despite the subpoenaed officer's failure to appear denied Mr. Stanton due process and should be reversed.

**A. The Parole Commission's Reclassification of Sowers as a Non-Adverse Witness Constitutes An Impermissible "Bait and Switch"**

An adverse witness is any person who provides adverse information from which a parole revocation finding could be based. *Id.* The hearing examiner has the obligation to label a requested witness "non-adverse" at the probable cause hearing rather than at the end of the revocation hearing. *Ash v. Reilly, No. 03-2007, 2006 WL 1363625 (D.D.C. May 05, 2006)* Especially after the hearing examiner made a "no finding" determination based on Officer Sowers' repeated failure to appear, "allowing the Commission to engage in such 'bait and switch' tactics would effectively eviscerate the right to confrontation guaranteed by *Morrissey*." *Id.*

Officer Sowers was the primary adverse witness against Mr. Stanton. Only Officer Sowers witnessed the alleged transaction. Officer Bartholomew's testimony and the police report written by Officer Salamone were the only pieces of evidence relied on to make the revocation determination. Both necessarily assumed the accuracy of Officer Sowers' initial observations. Without the liberty to confront Officer Sowers, Mr. Stanton could not obtain basic information concerning the alleged observation. For example, how far away was Officer Sowers from the two black males he allegedly witnessed exchanging a "small object" for currency? How was Officer Sowers able to identify Mr. Stanton as the perpetrator when, contrary to the lookout he himself issued, Mr. Stanton does not have a tattoo under his eye? The Commission's only witness, Officer

7

Bartholomew, was unable to answer such questions. Rather, he explicitly indicated the need to address all inquires concerning Officer Sowers' observations to Officer Sowers. as the hearing examiner recognized with her "no finding" recommendation only Officer Sowers could have provided the critical information necessary to obtain the "accurate knowledge" and "verified facts" upon which parole revocation decisions must be based. *See Morrissey, 408 U.S. 471* As the Supreme Court recognized in Gagnon, sometimes "there is simply no adequate alternative to live testimony." *411 U.S. at 782 n.5.*

Moreover, once a witness is recognized as being adverse the Commission cannot reclassify the witness simply because he failed to appear at the revocation hearing. *See Ash* Three times the hearing examiner acknowledged Officer Sowers' important role: subpoenaing him to appear at the revocation hearing, continuing the first hearing and re-subpoenaing him when he failed to appear, and recommending a "no finding" when he was again absent for the continued hearing. The Commission revoked parole without allowing Stanton to confront Officer Sowers and without articulating a good cause basis. Thus, the Commission implicitly reclassified Officer Sowers as a "non-adverse witness" based solely on his repeated refusal to appear. Stanton's due process rights were violated by the Commission's "bait and switch" tactics. *Id. At 26.*

**B. The Commission Provided No Good Cause Basis For Not Affording Stanton The Opportunity To Confront Officer Sowers.**

A "good cause basis" must be articulated for the Commission to refuse the parolee an opportunity to confront an adverse witness. *Morrissey, 408 U.S. at 498* To determine what qualifies as a "good cause basis," the D.C. Circuit has adopted a balancing test to weigh the need for confrontation against the Commission's reasons for

8

not producing the witness. *See Crawford, 323 F.3d at 128-30; United States v. Stanfield, 360 F.3d 1346, 1359-60 (D.C. Cir. 2004).* Using the balancing test, Courts have repeatedly failed to find a good cause basis where the adverse witness provides unsworn verbal allegations against the parolee. *See, e.g., United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986); United States v. Comito, 177 F.3d 1166, 1170-73 (9th Cir. 1999)*

Because the Commission failed to articulate any basis for the decision—good cause or otherwise--Mr. Stanton has no ability to attack the specific "good cause basis" for denying him the right to confront Officer Sowers. The Commission ignored the recommendation of the hearing examiner and sentenced Mr. Stanton to twenty-two (22) months all the while denying him the right to confront Officer Sowers without providing a single reason why Mr. Stanton was not entitled to confront the witness. The lack of an articulated good cause basis by the Commission is also a violation of Mr. Stanton's rights under *Morrissey*.

Additionally, there is no reason the Commission could have articulated that would have been sufficient to establish a good cause basis for denying Mr. Stanton the right to confront the producer of the "unsworn verbal allegations[1]" serving as a foundation for his parole revocation. *United States v. Fennell, 65 F.3d 812, 813-814* (finding unsworn verbal allegations among the least reliable forms of hearsay) Officer Sowers is not an undercover agent so his identity is already known. *Morrissey, 408 U.S. at 498* Officer Sowers is a police officer with the Metropolitan Police Department not a street-informant. Thus, there is no realistic danger of harm that could arise from his testimony. *Id.* He is not retired from the force nor does he live outside of the region. Denying Mr. Stanton the right to confront Officer Sowers based on the inconvenience of repeatedly

---

[1] Officer Sowers' allegations are entirely verbal as he is not the author of the police report.

9

delaying disposition on the revocation charges while Officer Sowers defied the subpoena issued for his appearance does not suffice. The desire for expediency does not constitute a good cause basis for depriving Mr. Stanton of his constitutional rights, especially when an agent of the government and not Mr. Stanton commands control over the delay.

Any potential good cause basis would need to be weighed against the need for confrontation. The need to "verify facts" and "expose bias" constitutes the core of the right to confront an adverse witness. *See, e.g., Id.; Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) These needs are especially salient when a police officer's eyewitness testimony forms the basis of a decision to revoke parole. *See, e.g., Bell*, 785 F.2d at 643-644 (Noting the inherently suspect nature of police observations arising from "personal and adversarial" relationship between police officers and suspects) Courts reviewing the constitutionality of revocation hearings afforded to parolees have treated observations made by police officers with suspicion, finding "a police officer's description of events as he [or she] witnessed them ...may be demonstrably reliable evidence of the fact that an arrest was made, but they are significantly *less reliable evidence of whether the allegations of criminal conduct are true.*" *Downie v. Klincar*, 759 F.Supp. 425, 428 (N.D. Ill. 1991)(internal citations and quotations omitted, emphasis added). *See also United States v. King*, 613 F.2d 670, 673 (7th Cir. 1980)(acknowledging unreliability of eyewitness police reports); *Burkhalter*, 588 F.2d at 607 (holding that a police officer's description of events as he witnessed them lacks objective certainty). The need to confront the only witness to the alleged violation, who also happens to be a police officer, heavily militates in favor of denying any good cause basis that the Commission could have provided.

10

### C. The Commission's Denial of Stanton's Confrontation Rights Was Prejudicial Error Because The Quantity and Quality of The Other Evidence Is Insufficient.

The standard to overturn a parole revocation decision for insufficient evidence requires a decision "either totally lacking in evidentiary support or [a decision] so irrational as to be fundamentally unfair" *Duckett v. Quick, 282 F.3d 844, 847 (D.C. Cir. 2002)* However, in the context of hearsay evidence, this standard only requires hearsay evidence to be " both unreliable and sufficiently important to the decision such that parolee is prejudiced by the lack of confrontation" in order to reverse the Commission's decision. *Ash citing Crawford, 323 F.3d at 128-29*.

The author of the police report in *Crawford v. Jackson* was not made available for cross-examination by the parolee; however, the court found that Mr. Crawford was not prejudiced by the denial because there was "internal corroboration" of the complainant's accusation contained within the police report. Moreover, the bloodstains and indentation found on the living room wall were consistent with complainant's accusation and Mr. Crawford did nothing to explain or deny those findings. The court also found Mr. Crawford's explanation of complainant's injury—she fell outside—to be "far-fetched." Mr. Crawford provided no evidence to contest the hearsay.

This Court, in *Ash*, found due process to be inconsistent with the hearing examiner's denial to allow Mr. Ash to confront the complaining witness. The denial was found prejudicial because the police officer who took the statements of "four or five" witnesses that allegedly saw Ash toss a box-cutter while fleeing the area, could not identify any of the witnesses for the purposes of allowing Mr. Ash to confront them about what they saw. The police officer's hearsay testimony was largely dependant upon the

11

unverifiable statements of the unidentifiable witnesses. The Commission relied on the complainant's medical records immediately following the incident and a box cutter located near the scene, however, the court still found that the right to confront the complaining witness was important enough to declare prejudicial effect.

Distinct from *Jackson*, each piece of hearsay evidence offered against Mr. Stanton fails to satisfy the traditional indicia of reliability. First, the non-appearing observing officer's unsworn verbal accusations comprise the foundation for all of the Commission's testimony against Mr. Stanton. The author of the police report relied on Officer Sowers' alleged observation and the arresting officer only apprehended Mr. Stanton because he "fit" the vague lookout description offered by Officer Sowers. The second suspect, the person Officer Sowers allegedly observed receiving "the small object," was never located. Officer Bartholomew found an amount of crack contained in a baggy around the area of the crime; however, no explanation was offered explaining who the drugs belonged to or why they were left after what Officer Sowers claimed was an uninterrupted drug deal. Moreover, Officer Sowers did not claim to see Mr. Stanton drop or toss any object. Also dissimilar to *Jackson*, Mr. Stanton offered a sworn affidavit casting an affirmative light on his story that the police approached him once, said he was not the man they were looking for, and then re-approached him five minutes later claiming that the officers' had him on tape selling drugs. Whereas the revocation decision in *Jackson* could be made on the basis of reliable hearsay evidence, the evidence supporting revocation in Mr. Stanton's case lacks the necessary indicia of reliability.

This case is even further on the continuum towards prejudicial effect than was *Ash*. The sole eyewitness in Stanton's case is inherently suspect due to his position as a

12

police officer. Also, while in *Ash* the Commission had no ability to determine the identity of the eyewitnesses, and therefore no ability to compel them to appear at the revocation hearing, here the Commission could not legally proceed with adjudication until Officer Sowers was made available. Also, no evidence akin to the medical records in *Ash* was presented against Stanton. The only evidence presented, aside from the second-level hearsay contained in the police report, was Officer Bartholomew's testimony that he identified Mr. Stanton based on Sowers' vague lookout description and that he found crack cocaine near the scene of Officer Sowers alleged observations. An isolated and unexplained baggie of crack cocaine provides nowhere near the probative value of the box-cutter in *Ash*—and not even the box-cutter was enough to save the Commission's constitutionally faulty parole revocation. Mr. Stanton's need to confront and cross-examine Officer Sowers in order to gain information and attempt to expose bias outweighs any attempt the Commission could have made at offering an acceptable good cause basis. The Commission's refusal to afford Mr. Stanton his *Morrissey* rights violated due process and that violation was prejudicial because the other evidence upon which the Commission relied was insufficiently reliable for revocation.

## RELIEF REQUESTED

For the reasons set forth above, Charles Stanton respectfully requests that the Commission:

(1) Release Mr. Stanton from custody and terminate the parole revocation process against him; or, in the alternative,

(2) Release Mr. Stanton from custody and order a final parole revocation hearing which comports with Due Process at which the adverse witness is present for cross-examination.