UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES STANTON,<br>Federal Register Number 04825-007<br>    Petitioner,<br><br>v.<br><br>U.S. PAROLE COMMISSION, et al.,<br>    Respondents. | :<br>:<br>:<br>:<br>: Case No. 1:06-cv-01105-PLF<br>:<br>:<br>:<br>: |

**PETITIONER'S REPLY TO UNITED STATES PAROLE COMMISSION'S OPPOSITION TO PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN CUSTODY IN THE DISTRICT OF COLUMBIA**

Charles Stanton, Petitioner, through counsel, respectfully submits this reply to the United States Parole Commission's ("the Commission") opposition to his petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2243. In their opposition to Mr. Stanton's petition for habeas corpus, the Commission asserts that (1) the hearsay evidence on which they relied to revoke Mr. Stanton's term of supervised release was reliable, (2) there was ample other evidence of his alleged criminal activity and (3) there was good cause for the absence of any officer that could testify about the alleged criminal activity. In fact, Officer Sowers' hearsay report has very few indicia of reliability. It is not corroborated by the Commission's evidence and even is contradicted by Mr. Stanton's evidence. Lastly, the Commission's belated assertion that there was good cause for relying on Officer Sowers' hearsay –an assertion which deprives Mr. Stanton of an opportunity to litigate the issue – does not survive scrutiny.

## I. The Commission's Decision to Revoke Mr. Stanton's Supervised Release Lacks Evidentiary Support

The Supreme Court in *Morrissey v. Brewer* makes clear that hearsay is allowed in the context of a parole or supervised release revocation hearing so long as due process concerns are satisfied. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct.2593, 33 L.Ed.2d. 484 (1972). As interpreted by the Circuit Courts, whether or not reliance on hearsay is constitutionally permissible is delineated by balancing the need for confrontation against good cause. The need for confrontation is a function of the reliability of the hearsay and its import to the case. It's the Commission's burden to demonstrate its reliance on whether the hearsay at issue is sufficiently reliable to justify due process concerns. *See e.g., United States v. Turner*, 312 F.3d 1137, 1142 (9th Cir. 2002) (government has the burden of proof); *United States v. Hooker*, 993 F.2d 898, 899-900 (D.C. Cir. 1993) (government's burden of proof is by a preponderance of the evidence); *United States v. Shields*, 751 F. 2d 247, 248 (8th Cir. 1984) (government had the burden of proof but failed to meet it); *United States v. Nagelberg*, 413 F.2d 708, 709 (2d Cir. 1969)(government has burden of persuasion); *Young v. United States*, 863 A.2d 804, 810 (D.C. 2004) (government's burden of proof is by a preponderance of the evidence; citing Hooker); *Harris v. United States*, 612 A. 2d 198, 203-207(D.C. 1992). Indeed "a parole authority takes a certain risk that its decision to revoke parole will not be judicially sustained where it relies solely on hearsay contained in a police investigative report as the basis for its decision." *Singletary v. Reilly*, 452 F.3d 868, 873 (D.C. Cir. 2006).

Here the Commission relied on Officer Sowers' police report as a primary basis to justify Mr. Stanton's supervised release revocation. But this report is not reliable. The report is vague and contains little detail about the person that he allegedly observes selling drugs –other than an indistinct description of a black male. Significantly, Mr. Stanton has a distinctive marking under

his eye of which Officer Sowers never mentioned in his lookout. The only physical feature identified by Officer Sowers was that he observed a 'black male,' the remaining description refers to only indistinct clothing. Nowhere in his observations, does Officer Sowers describe physical attributes such as complexion, height, build or approximate age.

The police report on its own has so little information about Officer Sowers' activities, experience and training that it is difficult if not impossible to assess the reliability of its assertions. There are several issues which Officer Sowers' report does not address. First, Officer Sowers' report provides few details regarding the drug transaction: there is no indication of his location in relation to the area he is observing, nor the angle at which he is observing it (all of these details are crucial to his line of sight). Because the observation occurs in the late afternoon in November at 15:51 and the arrest occurs after sunset at 17:05, (Comm'n Opp'n at Exh. E), it raises concerns about lighting and weather paramount to Officer Sowers' observations.

Second, there are also salient issues regarding Officer Sowers' state of mind and professional experience: namely, what is his level of experience?; Was it his first observation point assignment?; How long had he been on shift?; Was he ending his shift or starting his shift?; Or had he worked a double shift that day?; Had he made other observations from that point which led to arrests that day? How long had he been with that particular police unit?

Third, there is an extended gap in time between the observation made by Officer Sowers (15:51) and the arrest made by Officer Bartholomew (17:05). Relevant to this gap are the following questions: did the police have difficulty locating the person whom Officer Sowers had observed?; Did they stop numerous people in that time frame?; What was Officer Sowers doing

in the interim?; Were other descriptions given?; Were other arrests made as a result of those descriptions?

The answers to the aforementioned questions are crucial to assess reliability of Officer Sowers' report and his credibility as a witness because "[h]earsay evidence, which cannot be put to the fire of cross-examination, can hide biases, leave inconsistencies, provide false impressions, be mistranslated, exaggerated and distorted. *Ash v. Reilly*, 433 F.Supp.2d 37, 52 (D.D.C. 2006); *quoting, Belk v. Purkett*, 15 F.3d 803, 813 (8th Cir. 1994). The only way to assess the reliability of the conclusory assertions in the report and Officer Sowers' identification of Mr. Stanton is to question the declarant, Officer Sowers, the only percipient witness to the alleged drug transaction.

While the Commission asserts that Officer Bartholomew's testimony corroborates the police report (Comm'n Opp'n at 17), his testimony only touches on matters peripheral to the issue in question, namely, did Mr. Stanton possess narcotics with the intent to distribute them? Officer Bartholomew corroborates a few peripheral facts: Mr. Stanton was arrested, narcotics were found in the area and Mr. Stanton was (mistakenly) identified. None of these facts plays any significant role in the question regarding Mr. Stanton's alleged connection to the recovered narcotics. The interactions between Officer Bartholomew and Mr. Stanton are not even *contemporaneous* with the observations of Officer Sowers, which occurs *seventy-four minutes* prior to Mr. Stanton's arrest.

By his own admission, Officer Bartholomew stated that his only role was to arrest Mr. Stanton and to pick up the narcotics from behind a car. Exh. A at 14. However, Officer Bartholomew expressly states that he could not attribute the car or the narcotics to Mr. Stanton. Exh. A at 14, 16. In fact, Officer Bartholomew admits that he never saw Mr. Stanton possess the

drugs and never saw Mr. Stanton drop the drugs. (Exh. A at 16). Thus Officer Bartholomew's testimony provides no corroborative evidence of Mr. Stanton's alleged activity in Officer Sowers' report, thereby confirming Mr. Stanton's need to confront Officer Sowers.

In its opposition the Commission now says that it is now relying on *Mr. Stanton's* statements as evidence of corroboration of Officer Sowers' report. Comm'n Opp'n at 17-18. Their reliance on Mr. Stanton's statements was not reflected in the Notice of Action issued on May 8, 2006 (Comm'n Opp'n at Exh. M), presumably because Mr. Stanton's statements actually support his defense.

Mr. Stanton's statements, at worst confirm he was in the vicinity and was arrested. However, they also tell a compelling story of innocence. Never do his statements give any indication that he might be engaged in any type of illegal activity. Throughout his supervised release revocation hearing, Mr. Stanton maintained that he had no idea why he had been arrested. He stated that he was approached twice in a five minute time period by police officers. The first time he was approached, Mr. Stanton stated that the police stopped him were on their radios talking to each other and then left. Mr. Stanton stayed where he was. Exh. A at 21. He was approached a second time, a few minutes later, and was arrested. Significantly, Mr. Stanton did not attempt to leave the area at any point after the police first approached him, because he had done nothing wrong. Moreover, it is Mr. Stanton's version of events which is corroborated by two other people, eyewitness Mr. Reynell Tolson and Community Supervision Officer ("CSO") Nacre Williams. Comm'n Opp'n at 18 and Exh. A at 23.

Mr. Stanton presented a statement at his hearing on March 6, 2006 in which Mr. Reynell Tolson confirmed that he had witnessed the police officers approach Mr. Stanton once, leave and then return to arrest him, while Mr. Tolson, was standing with Mr. Stanton. Comm'n Opp'n at

Exh. I. The Commission has no basis to attack the reliability of Mr. Tolson's statement, but they curiously suggest that Mr. Tolson's statement is incomplete because it does not involve a discussion of the drug transaction. Comm'n Opp'n at 18. A review of the statement suggests that it does address the entire period in question; there is no discussion about a drug transaction because Mr. Stanton did not sell drugs that afternoon.

In addition to Mr. Tolson's statement, testimony from CSO Williams, only further confirms Mr. Stanton's exculpatory testimony. When CSO Williams was questioned about the statements Mr. Stanton made to her only a few days after his arrest, her response was that he had told her "verbatim, what he just stated [at the hearing]." Exh. A at 23. Mr. Stanton has maintained his innocence from the time of arrest.

The reliability of the police report cannot be assessed because it is minimal in quantity, and it is not corroborated by any tangential evidence the respondents attempt to put forward. The evidence from Officer Bartholomew, Mr. Stanton and the statement from Mr. Tolson, do not corroborate any of the crucial allegations on Officer Sowers' police report. Additionally, the hearsay is critical to the decision to revoke Mr. Stanton's supervised release, because it is the only evidence presented which contains allegations of illegal activity.

In short, Officer Sowers' accusation of criminal activity is the only evidence the Commission has to substantiate Mr. Stanton's revocation decision. The reliability of this accusation cannot be meaningfully assessed based only on the limited information presented in the report. Mr. Stanton has a due process right to confront Officer Sowers because absent traditional indicia of reliability or some other assurance that the hearsay is reliable, due process entitles a parolee to confront and cross-examine the source of the inculpatory hearsay evidence against him. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *see*

*also, United States v. Taveras*, 380 F.3d 532,538 (1st Cir. 2004) (confrontation required where un-sworn verbal allegations were critical to revocation decision); *McBride v. Johnson*, 118 F.3d 432, 438 (5th Cir. 1997) (parolee prejudiced by lack of confrontation where hearsay was critical). *United States v. Comito*, 177 F.3d 1166, 1171 (9th Cir. 1999) (right to confrontation depends on the reliability of the evidence and its significance to the decision to revoke parole); *Ash v. Reilly*, 433 F.Supp.2d 37 at 49 ("Whether confrontation is constitutionally mandated in a parole revocation hearing depends on the importance of the unreliable hearsay to the decision to revoke parole."). Officer Sowers' testimony is essential to prove any allegations of illegal activity; "the more important the witness to the government's case, the more important the defendant's right…to cross-examine the witness". *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993).

II.  **The Commission Does Not Have Good Cause for Officer Sowers' Absence and an Attempt to Come Up With That Finding After the Fact Must Fail**

The Commission asserts there is good cause for the non-appearance of Officer Sowers at Mr. Stanton's hearing. The Commission cannot sustain its burden under the circumstances to show good cause for Officer Sowers' absence. First, the good cause finding was not made in a timely manner; second, there are questions as to the validity of that after the fact good cause finding, namely the extent of Officer Sowers' undercover status; and third, the Commission made no attempt to accommodate Mr. Stanton's due process rights by suggesting alternatives to the live confrontation

Preliminarily, the good cause finding was not made in a timely manner and Mr. Stanton was never given a meaningful opportunity to litigate that issue. The Commission's rules themselves are clear that "[a]ll evidence upon which a finding of violation may be based shall be

disclosed to the alleged violator before the revocation hearing…and any additional evidence upon which the Commission intends to rely in determining whether the charged violation or violations if sustained, would warrant revocation of parole." 28 C.F.R. § 2.103 (d).

In fact, Officer Sowers was designated as an adverse witness *by* the Commission at the preliminary hearing. Comm'n Opp'n at Exh. G. The Commission subpoenaed him to Mr. Stanton's initial revocation hearing and when he did not show up, the hearing was continued to another date so that he could appear and present testimony. Comm'n Opp'n at Exh. J. At the first revocation hearing, no good cause finding was made and it was assumed that he could and would be able to testify at a future date. Officer Sowers was again subpoenaed to attend the continued hearing.

At the continued revocation hearing on April 12, 2006 when Officer Sowers again failed to appear, the hearing examiner did not find good cause for his absence. To the contrary, she found that in Officer Sowers' absence, there was insufficient evidence to justify a revocation, and in so doing, implicitly rejected any finding of good cause.[1] Comm'n Opp'n at Exh. L. The first time Mr. Stanton was informed of the Commission's decision, was in the notice of action issued as a result of his administrative appeal filed well after his revocation hearings. Comm'n Opp'n at Exh. O.

The Commission now states that that it made a good cause finding for Officer Sowers' absence after the continued revocation hearing on May 2, 2006, and failed to inform Mr. Stanton of that decision until August 3, 2006, three months after the decision had been made. Comm'n Opp'n at 14. But it is axiomatic that Mr. Stanton have the opportunity to litigate all aspects of

---

[1] We now know that the hearing examiner had been told outside the presence of Mr. Stanton, by Officer Bartholomew that Officer Sowers was operating in an undercover capacity and yet the hearing examiner still determined that Officer Sowers' testimony was necessary and without it, Mr. Stanton's supervised release could not be revoked.

the Commissions evidence including its good cause finding for the absence of a critical witness. The Commission's attempt, after the fact to make a good cause finding deprives Mr. Stanton the opportunity to litigate and challenge that decision.

Secondly, while the Commission relies on Officer Sowers' undercover capacity to justify a good-cause finding for his non-appearance, there is reason to question why the nature and extent of his undercover capacity precluded his attendance in this case. To begin with, Officer Sowers is named in the police report, identified by badge number and he signed the police report. Generally, when officers are operating in an undercover capacity, they take great measures to conceal their identities. Typically in police reports, undercover officers are referred to as "UC" followed by an identifying number, they are not named or identified by badge number and they do not sign the police reports on which their observations are based. Moreover, no formal documentation of Officer Sowers' undercover status was ever provided to the Commission or to Mr. Stanton –at the very least there is reason to question whether Officer Sowers was operating in such a secret capacity that he could not testify in this setting.

Even assuming that Officer Sowers was undercover (which the record as it stands does not support), the Commission made no attempt to preserve the secrecy of Officer Sowers' physical appearance. The Commission has in the past, when it has had witnesses with special concerns, required the Public Defender Service to travel to other cities or to conduct telephonic examinations of complaining witnesses. Not only did the Commission never propose any alternatives to ensure that Mr. Stanton would be afforded his confrontation rights, but Mr. Stanton never had the opportunity to propose any alternatives –because the Commission made its good cause finding well after Mr. Stanton's revocation hearing was over. Had the Commission raised the issue in a timely manner, Mr. Stanton would have suggested a myriad of alternatives to

in-person confrontation. For example, Officer Sowers could have been cross-examined telephonically, counsel could have waived the presence of Mr. Stanton and cross-examined Officer Sowers at the D.C. Metropolitan Police Headquarters at 300 Indiana Avenue N.W. Washington, D.C. Or Alternatively, Officer Sowers could have testified via video conferencing with his image and voice altered to protect his undercover status.

In sum, the Commission cannot *now* show good cause for Officer Sowers' absence from Mr. Stanton's hearing. And because Officer Sowers' allegations of criminal activity were central to the Commission's case and not inherently reliable, Mr. Stanton's due process rights were violated.

## CONCLUSION

For the reasons stated above and for the reasons stated in Mr. Stanton's initial petition, the Court should issue Mr. Stanton's Writ of Habeas Corpus and:

(1) Order the Respondents to release Mr. Stanton from custody, terminate the supervised release revocation process against him, and reinstate Mr. Stanton to supervision; or, in the alternative,

(2) Order the Respondents to release Mr. Stanton from custody and order a final supervised release revocation hearing that comports with the due process clause of the Constitution and any other relief the Court deems appropriate.

Mr. Stanton requests an expedited hearing on this petition.

Date: November 28, 2006

Respectfully submitted,

__/s/_____
Olinda Moyd
D.C. Bar. Number 444622
Chief of the Parole Division
Counsel for Charles Stanton
Public Defender Service for the
    District of Columbia

## Certificate of Attorney Representation of an Indigent Person
## Pursuant to LCvR 83.2(g)

This certifies that I, Olinda Moyd, Staff Attorney with the Public Defender Service for the District of Columbia, am a member in good standing of the Bar of the District of Columbia, Bar. No. 444622. I am providing representation without compensation pursuant to Unites States District Court for the District of Columbia LCvR 83.2(g). The Public Defender Service is authorized by statute to represent indigent citizens of the District of Columbia pursuant to D.C. Code §2-1602. I am familiar with the Local Rules of this Court.

                                                                                                /s/
                                                                                       Olinda Moyd